FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 10, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEANETTE R.,[1] | No. 1:20-cv-03218-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | **ECF Nos. 19, 20** |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 19, 20.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 19, and grants Defendant's motion, ECF No. 20.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

ORDER - 2

1    In reviewing a denial of benefits, a district court may not substitute its

2    judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

3    1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

4    rational interpretation, [the court] must uphold the ALJ's findings if they are

5    supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

6    F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§

7    404.1502(a), 416.902(a).  Further, a district court "may not reverse an ALJ's

8    decision on account of an error that is harmless."  *Id*.  An error is harmless "where

9    it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at

10    1115 (quotation and citation omitted).  The party appealing the ALJ's decision

11    generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*,

12    556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

14    A claimant must satisfy two conditions to be considered "disabled" within

15    the meaning of the Social Security Act.  First, the claimant must be "unable to

16    engage in any substantial gainful activity by reason of any medically determinable

17    physical or mental impairment which can be expected to result in death or which

18    has lasted or can be expected to last for a continuous period of not less than twelve

19    months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

20    impairment must be "of such severity that he is not only unable to do his previous

ORDER - 3

work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

ORDER - 4

a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

ORDER - 5

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On August 13, 2014, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability

onset date of December 1, 2013.[3]  Tr. 66-67, 210-26, 1026.  The applications were

denied initially and on reconsideration.  Tr. 131-34, 143-54.  Plaintiff appeared

before an administrative law judge (ALJ) on March 2, 2017.  Tr. 44-65.  On May

17, 2017, the ALJ denied Plaintiff's claim.  Tr. 15-40.  Plaintiff appealed the

denial; the Appeals Council declined to review the decision, and this Court then

remanded the case.  Tr. 1-6, 1143-53.  Plaintiff appeared for a remand hearing on

July 13, 2020.  Tr. 1075-1104.  On August 4, 2020, the ALJ again denied

Plaintiff's claim.  Tr. 1023-50.

        At step one of the sequential evaluation process, the ALJ found Plaintiff,

who met the insured status requirements through September 30, 2019, has not

engaged in substantial gainful activity since December 1, 2013.  Tr. 1029.  At step

two, the ALJ found that Plaintiff has the following severe impairments: spinal

impairment(s), dermatitis, carpal tunnel syndrome, fibromyalgia, migraine

headaches, mood disorder(s), anxiety disorder(s) (including PTSD), and

personality disorder(s).  *Id.*

---

[3] Plaintiff applied for Title II and Title XVI benefits on September 2, 2010, and

again applied for Title II benefits on June 19, 2012; both applications were initially

denied and not appealed.  Tr. 69.

ORDER - 7

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *Id.* The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can frequently climb ramps and stairs. She can occasionally kneel, crouch, crawl, and climb ladders. She can frequently handle and finger bilaterally. She should avoid concentrated exposure to humidity, wetness, extreme temperatures, pulmonary irritants, and hazards. She can understand, remember, and carry out simple instructions. She can exercise simple workplace judgment and can perform work that is learned on the job in less than thirty days by short demonstration and practice or repetition. She can respond appropriately to supervision and can have occasional superficial interaction with coworkers. She can work in jobs that require only occasional and superficial interaction or contact with the general public. She can deal with occasional changes in the work environment.

Tr. 1031.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 1040. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as production assembler, electrical accessories assembler I, and routing clerk. Tr. 1041. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of December 1, 2013, through the date of the decision. Tr. 1042.

ORDER - 8

Per 20 C.F.R. §§ 404.984, 416.1484 the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.  Whether the ALJ properly evaluated the medical opinion evidence; and

3.  Whether the ALJ properly evaluated the lay opinion evidence.[4]

ECF No. 19 at 2.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims.  ECF No. 19 at 3-12.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's

---

[4] Plaintiff lists the medical opinion and lay opinion evidence issues as one issue; however, the Court addresses the issues separately.

ORDER - 9

testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

explain why it discounted claimant's symptom claims)).  "The clear and

convincing [evidence] standard is the most demanding required in Social Security

cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

*Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 1032.

### 1. Work History

The ALJ found Plaintiff's work history was inconsistent with Plaintiff's allegations.  Tr. 1032-33.  Working with an impairment supports a conclusion that

ORDER - 11

1    the impairment is not disabling.  *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir.

2    1992); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009)

3    (seeking work despite impairment supports inference that impairment is not

4    disabling).  However, short-term work, which does not demonstrate the ability to

5    sustain substantial gainful employment, may be considered an unsuccessful work

6    attempt instead of substantial gainful activity.  *Gatliff v. Comm'r Soc. Sec. Admin.*,

7    172 F.3d 690, 694 (9th Cir. 1999); *see also Reddick v. Chater*, 157 F.3d 715, 722

8    (9th Cir. 1998) ("Several courts, including this one, have recognized that disability

9    claimants should not be penalized for attempting to lead normal lives in the face of

10    their limitations.").

11        The ALJ noted Plaintiff was able to sustain part-time work even during

12    periods when she had little to no treatment for her impairments.  Tr. 1032.

13    Plaintiff was able to work part-time as a cashier from 2010 through December

14    2013, and as a part-time receptionist from January 2014 through May 2014.  Tr.

15    1033.  However, Plaintiff alleges her disability begin in December 2013.  Tr. 1026.

16    In 2014, Plaintiff earned $2,626 from one employer and $2,322 from another,

17    totaling to $4,949.  Tr. 1226.  Plaintiff reported the most recent job ended due to

18    her uncontrolled mood swings but reported to another provider that the job ended

19    due to her pain.  Tr. 1033 (citing Tr. 452, 476).  The ALJ found Plaintiff's ability

20    to work in a semi-skilled receptionist job that required some social interaction was

ORDER - 12

inconsistent with Plaintiff's reported severe limitations.  Tr. 1033.  Plaintiff's ability to work well below the substantial gainful activity level for only five months past her alleged onset date does not demonstrate any clear inconsistency, although Plaintiff reported varying reasons for why the work ended.  However, any error in the ALJ's consideration of Plaintiff's work history is harmless as the ALJ gave other supported reasons to reject Plaintiff's claims, as discussed *infra*.  *See Molina,* 674 F.3d at 1115.

### 2.  Lack of Treatment

The ALJ found Plaintiff's lack of treatment was inconsistent with Plaintiff's allegations.  Tr. 1032-33.  An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment).  When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or

frequency of treatment is inconsistent with the alleged severity of complaints.
*Molina*, 674 F.3d at 1113-14.  But when the evidence suggests lack of mental
health treatment is partly due to a claimant's mental health condition, it may be
inappropriate to consider a claimant's lack of mental health treatment when
evaluating the claimant's failure to participate in treatment.  *Nguyen v. Chater*, 100
F.3d 1462, 1465 (9th Cir. 1996).

The ALJ noted Plaintiff had a gap in mental health care from March 2013
through August 2014.  Tr. 1033 (citing Tr.1675-76).  Plaintiff again had a lapse in
mental health care from March 2015 through August 2015.  Tr. 1035 (citing Tr.
969).  She then had a lapse from March to June 2018.  Tr. 1035 (citing Tr. 1452-
53).  When she saw the medication prescriber again in July 2018, the provider
stated, "This provider noted quite clearly that her poor follow up is impeding her
[mental health] care, and that this provider was not comfortable prescribing
medications without follow up."  Tr. 1484.  Plaintiff again had a lapse in care prior
to April 2019, when she went 10 months without seeking medication management.
Tr. 1035 (citing Tr. 1311).  Treatment records document Plaintiff's non-
compliance with taking prescribed mental health medications.  Tr. 1035-36.
Plaintiff argues she had reasons for the non-compliance but does not offer
reasoning for why she did not consistently pursue other treatment.  Plaintiff
discusses only the March 2013 through August 2014 gap.  She argues her alleged

ORDER - 14

onset date is December 2013 and she returned to treatment by June 2014 when she reported suicidal thoughts. ECF No. 19 at 4 (citing Tr. 453). However, Plaintiff does not address the other gaps in treatment and does not offer any reasons for the gaps.

Plaintiff also had no treatment for her reported pain symptoms, headaches, and paresthesia from late 2016 through January 2018, and after re-establishing care in January, she then did not return to care again until June 2018. Tr. 1034 (citing Tr. 1797-99, 1805-12). Plaintiff argues her primary care provider was no longer able to see her due to insurance issues beginning in November 2016; however, Plaintiff does not offer an explanation as to why she sought no care from any provider for her physical symptoms until January 2018. ECF No. 19 at 7-8. The record indicates Plaintiff maintained insurance and only needed to find a new provider. Tr. 943. This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 3. Inconsistent Objective Medical Evidence

The ALJ found the objective medical evidence was inconsistent with Plaintiff's symptom claims. Tr. 1033-36. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

ORDER - 15

1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

First, the ALJ found Plaintiff's mental health symptom complaints were not as severe as alleged. Tr. 1033-36. The ALJ noted that Plaintiff had generally normal psychological findings in treatment settings, while she had differing presentation at appointments related to her seeking state assistance. Tr. 1034. Plaintiff alleged she stopped working in 2014 due to psychological symptoms but reported to a provider in 2014 that her psychological impairment was not impacting her sense of wellbeing. Tr. 1033 (citing Tr. 476). While Plaintiff had some abnormalities at some appointments, such as abnormal thoughts and fund of knowledge, and poor memory and judgment, Tr. 1035 (citing Tr. 497-511, 966), Plaintiff had generally normal mood, grooming, behavior, speech, affect, memory, and eye contact at multiple appointments, Tr. 1035 (citing Tr. 497-511, 920-22, 958, 960-61, 967). Several medical records document that Plaintiff's complaints were incongruent with her presentation. Tr. 1035. She reported feeling tired while appearing energetic at one appointment. *Id.* (citing Tr. 1452-53). At another

appointment, her affect was deemed incongruent with her reportedly tired mood. Tr. 1035 (citing Tr. 920-22).  Records in 2016 and 2017 note that Plaintiff's psychological complaints were incongruent with her normal affect, speech, behavior, psychomotor activity, eye contact, attention, judgment, and thoughts.  Tr. 1035 (citing Tr. 936-37, 943-44, 949-50, 1484-85).

Additionally, despite limited compliance with prescribed medication, Plaintiff reported improvement each time she tried medication.  Tr. 1035-36.  In February 2015, Plaintiff reported improvement with medication.  Tr. 1035 (citing Tr. 1705).  In May 2016, Plaintiff reported improvement in her mood and impulsive anger with medication.  Tr. 1035 (citing Tr. 953-54).  Plaintiff reported a history of improvement with Lithium.  Tr. 1035 (citing Tr. 1353).  Plaintiff had normal mood, affect, behavior, eye contact, speech, and motor activity after being prescribed Abilify in 2019.  Tr. 1036 (citing Tr. 2056).

The ALJ also found Plaintiff's physical symptoms were not as severe as alleged.  Tr. 1033-35.  While Plaintiff alleged she stopped working in 2014 due to pain symptoms, the ALJ noted Plaintiff had generally normal physical examinations during that time and she had improvement in her symptoms with only conservative treatment.  Tr. 1033.  Plaintiff reported pain and numbness but exhibited symmetric strength and no swelling.  *Id.* (citing Tr. 476-77, 479-80, 482-82).  In June 2015, she had a normal examination despite ongoing complaints, and

ORDER - 17

later in 2015, she had generally normal exams except positive fibromyalgia tender points. Tr. 1033 (citing Tr. 866-83, 887-89). Plaintiff had multiple generally normal examinations through 2015 and 2016, during which she reported doing well on Lyrica and she reported having no physical disability and normal activities of daily living. Tr. 1033 (citing, e.g., Tr. 866, 869, 893-94). Plaintiff then had a gap in treatment until January 2018, when she was told to use wrist braces, and exercise, and when she returned in June 2018, she was again told to use braces, exercise, and take over-the-counter medication. Tr. 1034 (citing Tr. 1797-1800, 1805-12). In January 2019, Plaintiff reported pain of nine out of 10, but she was positive for tenderness in all 18 fibromyalgia points as well as two control sites. Tr. 1034 (citing Tr. 1748). Plaintiff reported ongoing severe pain but failed to follow-up with physical therapy appointments. Tr. 1034 (citing Tr. 1714-15). At a December 2019 examination, Plaintiff reported chronic pain but had normal gait, reflexes, sensation, and range of motion. Tr. 1034 (citing Tr. 2011-12).

Several appointments documented inconsistencies between Plaintiff's reported symptoms and the objective findings. Tr. 1034. Plaintiff had normal sensation at multiple appointments, and strength testing that was deemed inconsistent with her presentation, sensation testing that did not follow a dermatomal pattern, and fibromyalgia tender point testing that included Plaintiff reporting tenderness in areas not associated with fibromyalgia. *Id.* (citing Tr.

ORDER - 18

2013-20, 2023, 2025-26).  Plaintiff also had pain responses that were deemed disproportionate.  Tr. 1034 (citing Tr. 2081, 2084).

Plaintiff argues the ALJ erred because the normal findings are not inconsistent with disabling fibromyalgia and fibromyalgia symptoms are not expected to follow a dermatomal pattern.  ECF No. 19 at 4-5.  However, Plaintiff offers no argument regarding her reported positive symptoms at control points, and her carpal tunnel syndrome symptoms not following a dermatomal pattern.  While Plaintiff also argues the ALJ erred in considering that she was not in acute distress at appointments, *id.*, the ALJ reasonably found Plaintiff reporting a pain level of 15 on a 10-point scale was inconsistent with a lack of distress, Tr. 1034 (citing Tr. 1729-33, 1738).  Plaintiff also argues the ALJ failed to consider evidence that demonstrated more severe symptoms of carpal tunnel syndrome; however, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision).

The ALJ reasonably found Plaintiff's symptom claims were inconsistent with the objective medical evidence.  This was a clear and convincing reason, along with the other reasons offered, to reject Plaintiff's symptom claims.

ORDER - 19

1          *4.  Activities of Daily Living*

2          The ALJ found Plaintiff's activities of daily living were inconsistent with

3    her allegations.  Tr. 1036.  The ALJ may consider a claimant's activities that

4    undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a

5    substantial part of the day engaged in pursuits involving the performance of

6    exertional or non-exertional functions, the ALJ may find these activities

7    inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*,

8    674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to

9    be eligible for benefits, the ALJ may discount a claimant's symptom claims when

10   the claimant reports participation in everyday activities indicating capacities that

11   are transferable to a work setting" or when activities "contradict claims of a totally

12   debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

13         The ALJ found Plaintiff's activities were inconsistent with her allegations of

14   severe physical and psychological symptoms.  Tr. 1036.  Plaintiff has reported

15   being fully independent in her activities, including being able to handle housework,

16   clean her house daily, and shop.  *Id.* (citing Tr. 497-511, 2060).  Plaintiff has

17   reported normal activities of daily living at appointments.  Tr. 1036 (citing Tr. 866,

18   869, 877, 881).  Plaintiff has also reported being busy caring for two young

19   children while cleaning her home.  Tr. 1036 (citing Tr. 1476, 1482).  Plaintiff is

20   able to go on walks regularly and take children to the park.  Tr. 1036 (citing Tr.

2060).  In 2015, Plaintiff reported she was fully independent in her self-care and living skills, including being able to handle housework, shop independently, manage funds and bills, and drive.  Tr. 500.

Plaintiff argues her symptoms wax and wane, and the ALJ failed to identify inconsistencies between her periodic symptoms and periodic activities and the ALJ did not identify specific childcare activities.  ECF No. 19 at 11-12.  Plaintiff also argues her cleaning is a symptom of her obsessive-compulsive disorder, and a hindrance to her ability to work.  *Id.*  However, the ALJ noted that Plaintiff is able to clean her house every day, Tr. 1036 (citing Tr. 2060), which is inconsistent with her reported physical inability to perform activities of daily living on a regular basis.  While the ALJ did not identify specific childcare activities beyond taking the children to the park, Plaintiff was performing tasks like daily cleaning while also providing part-time childcare to a one-year-old and three-year-old.  Tr. 1036, 1476, 1482.  Any error in failing to identify specifics of the childcare is harmless as the ALJ identified other activities that were inconsistent with her allegations and the ALJ gave other supported reasons to reject Plaintiff's symptom claims.  *See Molina,* 674 F.3d at 1115.  This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.  Plaintiff is not entitled to remand on these grounds.

ORDER - 21

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinions of Jay Toews, Ed.D.; Suzanne Damstedt, M.A.; Barbara MacKenzie, ARNP; Patrick Waber, M.D.; and Eugene Kester, M.D. ECF No. 19 at 12-20.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (alteration in original); *see* 20 C.F.R. §§ 404.1513, 416.913 (2013).[5]  However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists.  20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).[6]  An ALJ may reject the opinion of a

---

[5] The regulation that defines acceptable medical sources is found at 20 C.F.R. §§ 404.1502, 416.902 for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

[6] The regulation that requires an ALJ's consider opinions from non-acceptable medical sources is found at 20 C.F.R. §§ 404.1502c, 416.920c for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

ORDER - 23

1  non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*,

2  763 F.3d at 1161.

3      *1.  Dr. Toews*

4      On February 2, 2015, Dr. Toews examined Plaintiff and rendered an opinion

5  on her functioning.  Tr. 497-511.  Dr. Toews diagnosed Plaintiff with dysthymic

6  disorder, provisional; anxiety disorder, not otherwise specified (NOS), with panic

7  disorder, obsessive-compulsive, generalized anxiety, and PTSD features;

8  personality disorder NOS, with avoidant, dependent, and borderline features; and a

9  rule out diagnosis of cognitive disorder, NOS.  Tr. 503.  Dr. Toews stated

10  Plaintiff's WAIS-IV Full Scale IQ is 75, placing Plaintiff in the borderline range.

11  Tr. 501.  Dr. Toews opined Plaintiff's scores indicate a very poor ability to process

12  and utilize more complex information; she would be a poor fit in occupations

13  involving verbal skills for interacting, judging, and decision making; her relatively

14  low verbal intellectual abilities and very low working memory would contribute to

15  difficulty in interpersonal and social interactions; she can understand and follow

16  simple two-step tasks; she can sustain attention but her psychological symptoms

17  would cause a moderate effect overall on her workplace functioning; she would

18  have moderate limitations in relating to coworkers, and making routine

19  judgments/decisions in the work place; she has moderate to marked limitations in

20  interacting with coworkers/supervisors; she has marked limitations with detailed

ORDER - 24

instructions; and she has marked to extreme limitations in interacting with the

general public.  Tr. 501-03.  As Dr. Toews' opinion was contradicted by the

opinions of Dr. Kester and Dr. Haney, Tr. 74-75, 101-03, the ALJ was required to

give specific and legitimate reasons to reject Dr. Toews' opinion.  *See Bayliss*, 427

F.3d at 1216.  The ALJ gave Dr. Toews' opinion minimal weight, although he

credited the portion of the opinion addressing Plaintiff's ability to sustain attention

on simple tasks and have limited contact with the public and coworkers.  Tr. 1038.

  First, the ALJ found Dr. Toews' opinion was inconsistent with the objective

medical evidence.  *Id.*  A medical opinion may be rejected if it is unsupported by

medical findings.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*,

359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957; *Tonapetyan v.*

*Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016,

1019 (9th Cir. 1992).  An ALJ may discredit physicians' opinions that are

unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  Moreover, an

ALJ is not obliged to credit medical opinions that are unsupported by the medical

source's own data and/or contradicted by the opinions of other examining medical

sources.  *Tommasetti*, 533 F.3d at 1041.  The ALJ noted that Dr. Toews assessed

Plaintiff with good grooming, normal behavior, eye contact, speech, and affect,

although she had abnormal fund of knowledge, thoughts, memory, and judgment.

Tr. 1038.  The ALJ also found Plaintiff's presentation at Dr. Toews' examination

differed from her generally normal attention, judgment, and thoughts that she presented with at multiple other appointments. *Id.* (citing, e.g., Tr. 920-22, 936-37, 943-44).

The ALJ specifically noted Dr. Toews' opinion that Plaintiff has social functioning limitations was not supported by objective evidence, Tr. 1038, and Plaintiff argues the opinion was supported by Plaintiff's imprecise and disorganized speech, need for clarification/examples, flighty thoughts and hypomanic tendencies, ECF No. 19 at 14 (citing Tr. 501). However, Plaintiff was pleasant, cooperative, animated, and gestured appropriately, related well and interacted appropriately, with good eye contact and normal mood, speech rate and volume. Tr. 500-01. While Plaintiff offers an alternative interpretation of the evidence, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). This was a specific and legitimate reason to reject Dr. Toews' opinion.

Second, the ALJ found Dr. Toews' opinion was inconsistent with the record as a whole. Tr. 1038. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Moreover, the extent to which a medical source is "familiar with the other information in [the

ORDER - 26

claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). The ALJ found Dr. Toews' opinion was inconsistent with Plaintiff's work history, activities, and longitudinal treatment records. Tr. 1038. As discussed *supra*, Plaintiff's ability to work prior to the alleged onset date, and below substantial gainful activity level after the alleged onset date, is not clearly inconsistent with disabling limitations. However, the ALJ reasonably found Plaintiff's activities, including her ability to independently handle her personal care, household chores, and provide childcare for two young children, were inconsistent with Dr. Toews' opinion.

Additionally, the ALJ reasonably found Plaintiff's longitudinal treatment record, which documents normal attention, judgment, memory, and thoughts, as well as lapses in treatment and compliance with medication, was inconsistent with Dr. Toews' opinion. Tr. 920-22, 936-37, 943-44, 949-50, 958, 1038. While Plaintiff again offers an alternative interpretation of the evidence and points to evidence of abnormal findings in the record, including impaired insight/judgment, tangential and circumstantial thoughts, ECF No. 19 at 14-15, the ALJ's interpretation of the evidence is reasonable. While there are abnormalities in the record, there are also numerous visits with normal findings, including normal orientation, thoughts, memory, and insight/judgment. Tr. 1314-15, 1408, 1412,

ORDER - 27

1453, 1504, 1587, 1812.  This was a specific and legitimate reason to reject Dr.

Toews' opinion.

Third, the ALJ gave more weight to the State agency opinions than he gave

to Dr. Toews' opinion.  Tr. 1038.  Generally, an ALJ should accord more weight to

the opinion of an examining physician than to that of a non-examining physician.

*See Andrews*, 53 F.3d at 1040-41.  However, the opinion of a nonexamining

physician may serve as substantial evidence if it is "supported by other evidence in

the record and [is] consistent with it."  *Id*. at 1041.  The ALJ found the State

agency opinions were more consistent with the record as a whole.  Tr. 1038.  The

State agency consultants, Dr. Kester and Dr. Haney, opined Plaintiff is capable of

understanding and remembering simple routine tasks, she can attend to and persist

on simple tasks with occasional decreased efficiency due to symptoms, and she is

capable of superficial contact with the general public and coworkers.  Tr. 85-86,

102-03.  The ALJ gave Dr. Kester and Dr. Haney's opinions significant weight.

Tr. 1039.  The ALJ found the opinions were consistent with Plaintiff's work

history, activities, treatment records and examinations.  Tr. 1039-40.  As the ALJ

considered whether the State agency opinions were supported by and consistent

with the other evidence, the ALJ reasonably gave more weight to Dr. Kester and

Dr. Haney's opinions than he gave to Dr. Toews' opinion.  This was a specific and

legitimate reason, supported by substantial evidence, to reject Dr. Toews' opinion.

*2.  Ms. Damstedt*

On January 23, 2017, Ms. Damstedt, a treating counselor, rendered an opinion on Plaintiff's functioning.  Tr. 972-74.  Ms. Damstedt opined Plaintiff has mild limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and accept instructions and respond appropriately to criticism from supervisors; moderate limitations in her ability to complete a normal workday/workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and maintain attention and concentration for extended periods; and Plaintiff otherwise is not significantly limited in the remaining areas of functioning.  Tr. 972-73.  Regarding the "B" criteria, she opined Plaintiff has no limitations in maintaining social functioning, mild limitations in activities of daily living, and moderate limitations in maintaining concentration, persistence, or pace, and she opined Plaintiff meets the "C" criteria.  Tr. 974.  She further opined Plaintiff would be off-task 12 to 20 percent of the time and would miss four or more days per month if she tried to work full-time.  *Id.*  As Ms. Damstedt is not an acceptable medical source, the ALJ was required to give germane reasons to reject Ms. Damstedt's opinion.  *See Ghanim*, 763 F.3d at 1161.  The ALJ gave Ms. Damstedt's opinion minimal weight, except to the degree it is consistent with no to mild limitations.  Tr. 1039.

ORDER - 29

First, the ALJ found Ms. Damstedt's opinion was inconsistent with the longitudinal record. *Id.* An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Moreover, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). The ALJ found Ms. Damstedt's opinion was inconsistent with Plaintiff's work history, activities, treatment records and longitudinal examinations. Tr. 1039. As discussed *supra,* the ALJ's finding that Plaintiff's activities and treatment record as a whole are inconsistent with disabling limitations is reasonable.

Second, the ALJ found Ms. Damstedt's opinion lacked any basis for her opinions. Tr. 1039. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. However, the fact that an opinion is in the form of a check-box questionnaire is not a proper basis to reject an opinion that is supported by treatment records. *See Garrison*, 759 F.3d at 1014 n.17.

Ms. Damstedt's opinion consists only of a checked box form and does not contain any explanation. Tr. 972-75. Plaintiff argues Ms. Damstedt's treatment

records supported her opinion and points to records showing that Plaintiff reported

thoughts of death/suicide on a single occasion and exhibited depressive and manic

symptoms on two occasions.  ECF No. 19 at 15-16 (citing Tr. 939, 942, 946).  Ms.

Damstedt's records document observations of abnormal mood and speech, and

Plaintiff's reported thoughts of suicide/death, impaired sleep, irritability,

tearfulness, and impaired concentration.  Tr. 939, 942, 946.  The appointments

focused on Plaintiff's issues with her boyfriend at the time, and Ms. Damstedt

noted that Plaintiff's lack of progress was likely in part due to the situational issue.

Tr. 939-42.  Ms. Damstedt's records contain a repeated paragraph regarding

Plaintiff's self-reported symptoms but contain minimal objective evidence of

limitations or symptoms.  For example, at a June 2016 appointment, the repeated

paragraph discusses self-reported symptoms, and a PHQ-9 score is discussed but

no objective evidence is documented.  Tr. 952.  In July 2016, Plaintiff reported

impaired sleep and pain, and there are no notes of objective evidence of symptoms

or limitations.  Tr. 948.  While Ms. Damstedt opined Plaintiff would miss four or

more days per month of work, Tr. 974, 1039, there is not documentation of

observed symptoms or limitations that explain why Plaintiff would miss four or

more days per month of work.  The ALJ reasonably found Ms. Damstedt's opinion

lacked a supporting explanation.

1       Third, the ALJ found Ms. Damstedt's opinion was internally inconsistent.

2   Tr. 1039.  Relevant factors to evaluating any medical opinion include the amount

3   of relevant evidence that supports the opinion, the quality of the explanation

4   provided in the opinion, and the consistency of the medical opinion with the record

5   as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495

6   F.3d at 631.  Moreover, a physician's opinion may be rejected if it is unsupported

7   by the physician's treatment notes.  *See Connett v. Barnhart*, 340 F.3d 871, 875

8   (9th Cir. 2003).  The ALJ found Ms. Damstedt's opinion internally inconsistent

9   because while she opined Plaintiff has no more than moderate limitations, with

10  most areas of functioning being rated no to mild limitations, Ms. Damstedt opined

11  Plaintiff would miss four or more days per month and would be off-task up to 20

12  percent of the time.  Tr. 971-74.  The ALJ reasonably found the opinion was

13  internally inconsistent.

14      Lastly, the ALJ gave more weight to the State agency opinions than he gave

15  to Ms. Damstedt's opinion.  Tr. 1039.  The opinion of a nonexamining physician

16  may serve as substantial evidence if it is "supported by other evidence in the record

17  and [is] consistent with it."  *Andrews*, 53 F.3d at 1041.  As discussed *supra,* the

18  ALJ reasonably found the State agency opinions were consistent with and

19  supported by the longitudinal record.

20

ORDER - 32

1    *3. Ms. MacKenzie*

2    On September 18, 2015, Ms. MacKenzie, a treating nurse practitioner,

3    rendered an opinion on Plaintiff's functioning.  Tr. 523-25.  Ms. MacKenzie

4    opined Plaintiff has mild limitations in her ability to remember locations and work-

5    like procedures, understand and remember very short and simple instructions,

6    understand and remember detailed instructions, carry out very short simple

7    instructions, ask simple questions or request assistance, be aware of normal

8    hazards and take appropriate precautions, and set realistic goals or make plans

9    independently of others; moderate limitations in her ability to carry out detailed

10   instructions, perform activities within a schedule, maintain regular attendance and

11   be punctual within customary tolerances, make simple work-related decisions,

12   accept instructions and respond appropriately to criticism from supervisors, get

13   along with coworkers or peers without distracting them or exhibiting behavioral

14   extremes, maintain socially appropriate behavior and adhere to basic standards of

15   neatness and cleanliness, respond appropriately to changes in the work setting; and

16   marked limitations in her ability to sustain an ordinary routine without special

17   supervision, maintain attention and concentration for extended periods, work in

18   coordination with or proximity to others without being distracted by them,

19   complete a normal workday/workweek without interruptions from psychologically

20   based symptoms and perform at a consistent pace without an unreasonable number

ORDER - 33

and length of rest periods, and interact appropriately with the general public.  Tr. 523-24.  She further opined Plaintiff has moderate to marked limitations in all three "B" criteria, Plaintiff meets the "C" criteria, Plaintiff would be off task more than 30 percent of the time and would miss four or more days per month if she worked full-time.  Tr. 525.  As Ms. MacKenzie is not an acceptable medical source, the ALJ was required to give germane reasons to reject Ms. MacKenzie's opinion.  *See Ghanim*, 763 F.3d at 1161.  The ALJ gave Ms. MacKenzie's opinion minimal weight.  Tr. 1039.

First, the ALJ found Ms. MacKenzie's opinion lacked an objective basis.  *Id.* The Social Security regulations "give more weight to opinions that are explained than to those that are not."  *Holohan*, 246 F.3d at 1202.  "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *Bray*, 554 F.3d at 1228.  Like Ms. Damstedt's opinion, Ms. MacKenzie's opinion consists only of checkboxes without any supporting explanation.  Tr. 523-26.  Plaintiff argues Ms. MacKenzie's opinion is supported by her treatment records but cites only to evidence that she treated Plaintiff and does not set forth any argument as to how the records demonstrate an objective basis for the disabling opinion.  ECF No. 19 at 17.  The records cited to by Plaintiff are other provider's medical records, who note that Plaintiff was seeing Ms. MacKenzie.  Tr. 465, 645, 648.  While

1  Disability Determination Services requested Ms. MacKenzie's records, they were

2  not received. Tr. 143. There does not appear to be any medical records signed by

3  Ms. MacKenzie in the record. The ALJ reasonably found Ms. MacKenzie's

4  opinion did not have an objective basis.

5      Second, the ALJ found Ms. MacKenzie's opinion was inconsistent with the

6  longitudinal record. Tr. 1039. An ALJ may discredit physicians' opinions that are

7  unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Moreover, the

8  extent to which a medical source is "familiar with the other information in [the

9  claimant's] case record" is relevant in assessing the weight of that source's medical

10  opinion. *See* 20 C.F.R. § 416.927(c)(6). Ms. MacKenzie opined Plaintiff has

11  multiple marked limitations, would miss four or more days per month of work, and

12  would be off task more than 30 percent of the time. Tr. 523-25. However, this is

13  inconsistent with multiple other medical opinions, and the visits discussed by the

14  ALJ that contain many largely normal mental findings. As discussed *supra,* the

15  ALJ reasonably found the longitudinal record is inconsistent with disabling

16  limitations.

17      Third, the ALJ gave more weight to the State agency opinions than he gave

18  to Ms. MacKenzie's opinion. Tr. 1039. The opinion of a nonexamining physician

19  may serve as substantial evidence if it is "supported by other evidence in the record

20  and [is] consistent with it." *Andrews*, 53 F.3d at 1041. As discussed *supra,* the

ALJ reasonably considered the State agency opinions and found they are consistent with and supported by the longitudinal record.

    *4. Dr. Waber*

On March 13, 2014, Dr. Waber, a treating provider, rendered an opinion on Plaintiff's functioning.  Tr. 485.  Dr. Waber stated he was keeping Plaintiff off work until at least April 12, due to her "significant issues with pain, weakness." *Id.*  As Dr. Waber's opinion was contradicted by the opinions of Dr. Kester and Dr. Haney, Tr. 74-75, 101-03, the ALJ was required to give specific and legitimate reasons to reject Dr. Waber's opinion.  *See Bayliss*, 427 F.3d at 1216.  The ALJ gave Dr. Waber's opinion minimal weight.  Tr. 1040.

First, the ALJ found Dr. Waber's opinion was a temporary limitation.  *Id.* Temporary limitations are not enough to meet the durational requirement for a finding of disability.  20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning").  Dr. Waber's opinion indicated Plaintiff should be off work for at least one month.  Tr. 485.  At the next appointment in May 2014, there is no mention of an ongoing inability to work, thus there is no evidence Dr. Waber

1  extended his opinion that Plaintiff should not work past April 12, 2014. Tr. 480-

2  81. Plaintiff argues Dr. Waber did not alter or rescind his opinion and therefore the

3  opinion was not temporary and thus meets the duration requirement. ECF No. 19

4  at 18. However, the ALJ's finding that Dr. Waber's opinion was temporary was a

5  reasonable conclusion supported by substantial evidence, given a lack of any

6  further discussion in the records of Plaintiff being unable to work.

7      Second, the ALJ found Dr. Waber's opinion lacked objective support and

8  therefore relied too heavily on Plaintiff's self-report. Tr. 1040. The Social

9  Security regulations "give more weight to opinions that are explained than to those

10 that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion

11 of any physician, including a treating physician, if that opinion is brief, conclusory

12 and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. The

13 Ninth Circuit in *Ghanim* contemplated that medical sources rely on self-reports to

14 varying degrees and held that an ALJ may reject a medical source's opinion as

15 based on unreliable self-reports only when the medical source relied "more heavily

16 on a patient's self-reports than on clinical observations." *Ghanim,* 763 F.3d at

17 1162. The ALJ noted that Dr. Weber's examinations leading up to the time of his

18 opinion had been unremarkable except Plaintiff's self-reported symptoms. Tr.

19 1040. In March 2014, Plaintiff reported chronic pain and tingling numbness, but

20 on examination, Plaintiff had normal symmetrical strength, and normal active

ORDER - 37

range of motion, with subjective tingling/numbness.  Tr. 482-83, 488.  The ALJ

reasonably found Dr. Waber relied on Plaintiff's unreliable self-report in forming

in his opinion.

Third, the ALJ gave more weight to the State agency opinions than he did to

Dr. Waber's opinion.  Tr. 1040.  Other cases have upheld the rejection of an

examining or treating physician based in part on the testimony of a non-examining

medical advisor when other reasons to reject the opinions of examining and

treating physicians exist independent of the non-examining doctor's opinion.

*Lester*, 81 F.3d at 831.  As the ALJ gave other supported reasons to reject Dr.

Waber's opinion, the ALJ reasonably gave more weight to the State agency

opinions than he gave to Dr. Waber's opinion.

*5.  Dr. Kester*

On February 4, 2015, Dr. Kester, a State agency psychological consultant,

rendered an opinion on Plaintiff's functioning.  Tr. 74-75.  Dr. Kester opined

Plaintiff has moderate limitations in her ability to understand and remember

detailed instructions but is capable of understanding and remembering simple,

routine tasks; she is moderately limited in her ability to carry out detailed

instructions, maintain attention/concentration for extended periods, and complete a

normal workday/workweek without interruptions from psychologically based

symptoms and perform at a consistent pace without an unreasonable number and

ORDER - 38

length of rest periods, but she is able to attend to and persist on simple tasks with

occasional decreased efficiency due to symptoms; she is moderately limited in her

ability to interact with the general public, but is capable of superficial contact with

the general public and coworkers; and she otherwise is not significantly limited in

the remaining areas of functioning.  *Id.*  The ALJ gave Dr. Kester's opinion

significant weight but gave more weight to the opinion of State agency consultant

Dr. Haney.  Tr. 1039.

Plaintiff contends the ALJ erred in crediting Dr. Kester's opinion but failing

to incorporate the limitation that Plaintiff would occasionally have decreased

efficiency due to symptoms.  ECF No. 19 at 19.  Plaintiff argues the limitation is

disabling, because occasional is defined as up to one-third of the time and being

off-task more than 10 percent of the time results in unemployability.  *Id.*  However,

the definition cited to by Plaintiff defines occasional as "up to" one-third of the

time, meaning Plaintiff would have decreased efficiency one-third of the time or

less, and Dr. Kester did not indicate the decreased efficiency would prevent

Plaintiff from working.  Tr. 73-74.  Rather, Dr. Kester opined Plaintiff was still

capable of performing simple routine tasks.  Tr. 74.  Further, as Dr. Kester's

opinion resulted in a finding Plaintiff is not disabled, it is clear this was not a

disabling opinion by the Agency's standards.  Tr. 77.  Plaintiff has not

ORDER - 39

1    demonstrated the ALJ harmfully erred in his analysis of Dr. Kester's opinion.

2    Plaintiff is not entitled to remand on these grounds.

3    **C. Lay Opinion Evidence**

4            Plaintiff contends the ALJ erred in his consideration of the opinions of

5    Debbie Clark, Barbara Kennedy, Betty Lai, Robert Kennedy, Janelle Zink, Taylor

6    Gardenshire, and Ruby R.  ECF No. 19 at 20-21.

7            An ALJ must consider the statement of lay witnesses in determining whether

8    a claimant is disabled.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053

9    (9th Cir. 2006).  Lay witness evidence cannot establish the existence of medically

10   determinable impairments, but lay witness evidence is "competent evidence" as to

11   "how an impairment affects [a claimant's] ability to work."  *Id.*; 20 C.F.R. §§

12   404.1513, 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir.

13   1993) ("[F]riends and family members in a position to observe a claimant's

14   symptoms and daily activities are competent to testify as to her condition.").  If a

15   lay witness statement is rejected, the ALJ "'must give reasons that are germane to

16   each witness.'"  *Nguyen*, 100 F.3d at 1467 (citing *Dodrill*, 12 F.3d at 919).

17           As these lay statements contain similar statements to Plaintiff's symptom

18   testimony, and the ALJ properly discredited Plaintiff's symptom testimony for

19   several clear and convincing reasons, the ALJ needed only point to the same

20   reasons to discredit this lay testimony.  *See Molina*, 674 F.3d at 1114; *Valentine v.*

ORDER - 40

*Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).  Further, the ALJ was not required to give an individualized discussion of each witness' statement in order to properly reject it.  *See Molina*, 674 F.3d at 1114.  Like Plaintiff's statements, the ALJ found the lay statements were inconsistent with the longitudinal record, including her activities and treatment record.  Tr. 1037-38.  The ALJ also noted some of the opinions were rendered two years before the relevant time period and found the State agency opinions were more consistent the evidence than the lay opinions.  *Id.*  The ALJ reasonably rejected the lay opinion evidence.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

1    The District Court Executive is directed to file this Order, provide copies to

2  counsel, and **CLOSE THE FILE.**

3    DATED August 10, 2022.

4                    *s/Mary K. Dimke*
                     MARY K. DIMKE
5             UNITED STATES DISTRICT JUDGE

ORDER - 42